1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   SOUTHERN CALIFORNIA STROKE              CASE NO. 09-CV-744 JLS (AJB)
     REHABILITATION ASSOCIATES, INC.,
12                                           **ORDER: (1) GRANTING**
                                Plaintiff,   **DEFENDANT'S REQUEST FOR**
13                                           **JUDICIAL NOTICE; (2) DENYING**
          vs.                                **DEFENDANT'S MOTION FOR**
14                                           **SUMMARY JUDGMENT;**
                                             **(3) GRANTING IN PART AND**
15                                           **DENYING IN PART PLAINTIFF'S**
     NAUTILUS, INC.,                         **MOTION FOR SUMMARY**
16                                           **JUDGMENT**
                                Defendant.
17                                           (Doc. Nos. 94, 94-7, 100)
18
19          Presently before the Court are the parties' cross motions for summary judgment. (Doc. Nos.
20   94, 100.) Also before the Court are Defendant's request for judicial notice (Doc. No. 94-7 (RJN), and
21   the parties' respective oppositions and replies (Doc. Nos. 99 (Pl.'s Opp'n), 104 (Def.'s Opp'n), 103
22   (Def.'s Reply), 105 (Pl.'s Reply)). Having considered the parties' arguments and the law, the Court
23   **GRANTS** Defendant's request for judicial notice, **DENIES** Defendant's motion for summary
24   judgment, and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's cross motion.
25                                    **BACKGROUND**
26          This lawsuit is the second action arising out of a more than ten-year-old dispute over a contract
27   for the purchase of medical grade exercise equipment. Four district judges, a host of neutral
28   mediators, a special master, and two Ninth Circuit panels have had the pleasure of making the parties'

acquaintances.  Although this matter's tortuous litigation history could fill volumes—as the parties' briefing demonstrates—the following represents the Court's best effort to briefly set forth the relevant factual and procedural background.

In 1998 and 1999, Ponani Sukumar ordered "custom designed, medical grade [exercise] equipment designed for stroke rehabilitation purposes" from Defendant Nautilus, Inc. (Nautilus or Defendant).[1]  (Doc. No. 99-10 (Sukumar Decl.) ¶¶ 4–5; Doc. No. 99-4 (Smith Decl.) ¶ 5.)  Jeff Turner and Frank Smith negotiated the terms of the sale on behalf of Nautilus.  (Sukumar Decl. ¶ 5; Smith Decl. ¶ 5.)  Mr. Sukumar paid extra for "high end powder coating" on the machines in lieu of an ordinary paint job.  (Sukumar Decl. ¶ 7; Smith Decl. ¶ 6.)  Mr. Sukumar believed that the powder coating would protect the underlying metal frame against degradation, including rust and corrosion. (Sukumar Decl. ¶ 7.)  Mr. Sukumar told Mr. Smith and Mr. Turner that the availability of powder coating and a warranty covering defects in powder coating influenced his decision to purchase the equipment from Nautilus.  (Sukumar Decl. ¶¶ 6–7, 9–10; Smith Decl. ¶¶ 6–7.)

In approximately March of 1999, Nautilus advised Mr. Sukumar that the equipment he had ordered was ready.  (Sukumar Decl. ¶ 11; Smith Decl. ¶ 13.)  Mr. Sukumar reviewed photographs and videos of the machines and determined that there were "significant problems" with the machines. (Sukumar Decl. ¶ 11; Smith Decl. ¶ 13.)  Mr. Sukumar asked Nautilus to remedy the problems before delivery.  (Sukumar Decl. ¶ 11; Smith Decl. ¶ 13.)  Nautilus attempted to do so, but it could not conform the machines to the contract specifications.  (Sukumar Decl. ¶ 11; Smith Decl. ¶ 13.)

On February 11, 2000, Mr. Sukumar filed in the United States District Court for the Southern District of California a verified complaint against Nautilus for breach of contract, specific performance, and injunctive relief (the *Direct Focus* action).[2]  (Sukumar Decl. ¶ 11; Doc. Nos. 99-9 to 99-14 (Def.'s Notice of Lodgment (NOL)) Ex. 1.)  Magistrate Judge Anthony J. Battaglia brokered a settlement between the parties, pursuant to which Nautilus would deliver the equipment to Mr.

---

[1]  At the time Mr. Sukumar ordered the equipment, Nautilus was known as Direct Focus, Inc. (Sukumar Decl. ¶ 11; Smith Decl. ¶ 13; Doc. No. 94-1 (Mem. ISO Def.'s MSJ), at 3.)  For clarity's sake, the Court refers to Defendant as Nautilus throughout this Order, notwithstanding that Defendant was known as Direct Focus at the time of the underlying events.

[2]  Case No. 00-CV-304 LAB (AJB).

Sukumar for inspection by retired Magistrate Judge Harry R. McCue.  (Sukumar Decl. ¶ 13; Def.'s NOL Ex. 2.)[3]

In approximately October 2001, Nautilus delivered the equipment for inspection by Judge McCue and Mr. Sukumar.  (Sukumar Decl. ¶ 13.)  Nautilus repaired some of the defects Mr. Sukumar identified on site —including cosmetic defects in the powder coating on the machines—and returned some of the machines to its factory for further repairs.  (*Id.*; Def.'s NOL Ex. 2, at 1; Def.'s NOL Ex. 3, at 2.)[4]  However, Judge McCue concluded that "Nautilus [had] complied with the contract with respect to the machines on site" and recommended that Mr. Sukumar be directed to pay the balance owing to Nautilus for the equipment.  (Def.'s NOL Ex. 2, at 2; Def.'s NOL Ex. 3, at 3.)  Judge McCue noted that Mr. Sukumar could address any remaining discrepancies "pursuant to any warranty which may be applicable."  (*Id.*)

Thereafter, Nautilus delivered additional equipment to Mr. Sukumar and re-delivered the machines it had returned to its factory.  (Sukumar Decl. ¶ 14; Def.'s NOL Ex. 3, at 3.)  Mr. Sukumar rejected the machines.  (Sukumar Decl. ¶ 14.)  After meeting with the parties and reviewing Mr. Sukumar's list of complaints (Def.'s NOL Ex. 3, at 4), Judge McCue concluded that "[t]he only satisfactory solution to [the] dispute [was] to rescind the contract and restore the parties to the status quo ante" (*id.* at 7).

On August 7, 2002, in light of Judge McCue's findings, Judge Battaglia concluded that the settlement process had reached an impasse and that further litigation was necessary to adjudicate the parties' positions.  (Def.'s NOL Ex. 5, at 2.)  Judge Battaglia ordered that the equipment temporarily remain in Mr. Sukumar's possession to allow Mr. Sukumar "time to complete an expert inspection or analysis needed for trial."  (*Id.*)  On January 7, 2003, Judge Battaglia ordered Mr. Sukumar to return the equipment to Nautilus.  (Sukumar Decl. ¶ 15.)

---

[3] Plaintiff objects to several exhibits accompanying Defendant's notice of lodgment, including Judge McCue's findings and determinations.  (*See* Doc. No. 99-16 (Objection to Exs.), at 2–3.)  The Court has reviewed Plaintiff's objections and finds them without merit.  Simply put, Plaintiff objects on the ground that the findings of Judge McCue and the special master "may not be given collateral estoppel effect because they are not final decisions."  (*Id.*)  This is not a proper evidentiary objection; rather, it addresses the substance of Defendant's motion.  Accordingly, Plaintiff's objection is **OVERRULED**.

[4] The Court's citations to the notice of lodgment refer to the exhibits' original page numbers.

On April 1, 2003, Mr. Sukumar amended his complaint in the *Direct Focus* action.  (Def.'s NOL Ex. 6.)  The amended complaint alleged the same causes of action as the original complaint and added claims for fraud and violation of California Business and Professions Code section 17200.  (*Id.*; *see also* Def.'s NOL Ex. 1.)  With the exception of the claims for breach of contract, fraud, and specific performance, all of the claims were disposed of before trial.  (Def.'s NOL Ex. 7, at Ex. A, at 1–2.)  After a four-day bench trial, District Judge Larry Alan Burns granted judgment in Mr. Sukumar's favor on his breach of contract and specific performance claims.  (*Id.* at 1; *see also* Def.'s NOL Ex. 7 (showing judgment entered December 8, 2004).)  Judge Burns concluded that Nautilus breached its contract with Mr. Sukumar by, among other things, failing to provide Mr. Sukumar with certain labeling and features he had bargained for.  (Def.'s NOL Ex. 7, at Ex. A, at 5–6.)  Regarding Mr. Sukumar's complaints about cosmetic defects, however, Judge Burns concluded:

> Nautilus is not in breach for having initially supplied machines with some pinholes in weld seams, weld spatter, variable size decals, one machine with a rusty bar, and one machine with latent rust requiring disassembly, sand blasting, and re-painting, and the like.  Minor imperfections do not render the equipment unfit for its intended purposes.  Nautilus cured or committed to cure most of the minor quality control items, and shall do so.

(*Id.* at 6.)  Judge Burns ordered Nautilus to conform the equipment to the contract specifications and deliver it to Mr. Sukumar by November 29, 2004, later extended to December 31, 2004.  (*Id.*; Def.'s NOL Ex. 8, at 1.)  The judgment gave Mr. Sukumar fourteen days after delivery to inspect and accept the machines.  (Def.'s NOL Ex. 7, at Ex. A, at 6.)

Nautilus re-delivered equipment on December 30, 2004.[5]  (Def.'s NOL Ex. 8, at 2.)  On January 18, 2005, Mr. Sukumar filed a lengthy notice of conditions constituting material breach.  (Def.'s NOL Ex. 8.)  Mr. Sukumar's notice contained numerous complaints regarding the condition of the equipment's powder coating.  (*See id.* at 4–6, 8–9, 11, 14, 17, 20.)  Judge Burns ultimately rejected Mr. Sukumar's notice as untimely and denied him post-judgment relief.  (*See* Def.'s NOL Ex.

---

[5]  Immediately before payment was due to Nautilus for the equipment, Mr. Sukumar assigned all his rights in the equipment to Souther California Stroke Rehabilitation Associates, Inc. (SCSRA), Plaintiff in this action.  (Def.'s NOL Ex. 7, at 4; Doc. No. 1 Ex. A (Compl.) ¶ 26; Compl. Ex. D.)  However, Mr. Sukumar remained the named plaintiff in the Direct Focus action.

9.)  Mr. Sukumar timely appealed.[6]

The Ninth Circuit reversed Judge Burns's ruling that Mr. Sukumar's failure to timely file his notice deprived the court of jurisdiction to consider it and remanded for consideration of Mr. Sukumar's motion to enforce the judgment under Federal Rule of Civil Procedure 70.  *Sukumar v. Direct Focus Inc.*, 224 F. App'x 556, 560 (9th Cir. 2007).  The court suggested that, on remand, Judge Burns appoint a special master "to work out a recommended final order."  *Id.*

As the Ninth Circuit suggested, Judge Burns appointed retired Justice Howard B. Wiener to serve as a special master on remand.  (Def.'s NOL Ex. 13.)  Justice Wiener received written materials from both parties and established a website that allowed Mr. Sukumar to itemize the defects on each machine and Nautilus to respond.  (Def.'s NOL Ex. 14, at 1.)  Among other issues, Mr. Sukumar complained of "defective fit and finish including seriously compromised powder coating protection provided on all delivered equipment."  (*Id.* at 2.)  After reviewing the written materials and the parties' submissions to the website, Justice Wiener conducted an on-site inspection of the equipment with the parties, their counsel, and Mr. Sukumar's experts.  (*Id.* at 3.)

On March 8, 2008, Justice Wiener submitted his findings.  (*See* Def.'s NOL Ex. 14.)  Relevant here, Mr. Sukumar's expert witness, Michael Cravens, opined that "the barrier protective value of the applied powder coated finish to the Nautilus fitness equipment [was] degrading rapidly" for a variety of reasons.  (*Id.* at 8.)  However, Justice Wiener generally "found each machine to be in good working condition with no defects that could reasonably and objectively be considered material."  (*Id.* at 9.)  Justice Wiener rejected Mr. Cravens's claim that the alleged powder coating defects would reduce the useful life of the equipment.   (*Id.* ("I am satisfied that the useful life of each machine will not be reduced by any of the alleged defects identified by Cravens.").)  Accordingly, with two exceptions not relevant here, Justice Wiener recommended that Judge Burns reject Mr. Sukumar's "broad assertion that there [was] a defective fit and finish with seriously compromised powder coating on all the

---

[6]  While Mr. Sukumar's appeal was pending in the Ninth Circuit, SCSRA filed a separate complaint against Nautilus in San Diego Superior Court for, *inter alia*, breach of express warranty and breach of implied warranty regarding the same equipment.  (Def.'s NOL Ex. 11, at Ex. A.)  Nautilus removed the complaint to federal court and moved to dismiss it on the basis of claim preclusion.  (Def.'s NOL Ex. 11; Def.'s NOL Ex. 12.)  On July 29, 2005, SCSRA voluntarily dismissed the complaint without prejudice.  (Doc. Nos. 94-7 to 94-8 (Def.'s RJN) Ex. 3.)

delivered equipment." (*Id.* at 14.)

On April 23, 2008, Judge Burns adopted Justice Wiener's recommendations with minor modifications, including Justice Wiener's recommendation regarding Mr. Sukumar's fit and finish complaints. *See Sukumar v. Direct Focus, Inc.*, 2008 WL 1860677, at *6–7 (S.D. Cal. Apr. 24, 2008) ("The court finds much of the deterioration cannot be attributed solely to defects arising from the machine conditions at the time of delivery, and is mindful of the inspections of that equipment memorialized in the record that occurred years ago by neutral observers who also described as minor, frivolous, or unrealistic many of Sukumar's complaints."). On October 16, 2009, the Ninth Circuit affirmed Judge Burns's order adopting Justice Wiener's report and recommendation, thus ending the more than nine-year *Direct Focus* saga. *See Sukumar v. Direct Focus, Inc.*, 349 F. App'x 163 (9th Cir. 2009).

On December 22, 2008, Plaintiff filed in Los Angeles Superior Court a complaint against Nautilus for breach of express warranty, breach of implied warranty for fitness of purpose, and breach of implied warranty of merchantability. (*See* Compl.) Defendant removed the case to the United States District Court for the Central District of California on January 20, 2009 (Doc. No. 1.), and on April 10, 2009, District Judge Dale S. Fischer transferred the case to this District (Doc. No. 18). On May 28, 2009, the Court denied Plaintiff's motion to retransfer to the Central District of California. (Doc. No. 29.) On April 30, 2009, Judge Burns denied Defendant's request that he take the case pursuant to Civil Local Rule 40.1(d). (Doc. No. 27.)

On August 12, 2010, Defendant filed its motion for summary judgment. (Doc. No. 94.) On September 3, 2010, Plaintiff responded to Defendant's motion and cross-moved for summary judgment. (Doc. Nos. 99, 100.) The Court heard oral argument on November 12, 2010. (Doc. No. 109.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome

of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### 1.   Defendant's Requests for Judicial Notice

Defendant moves the Court to take judicial notice of certain documents filed in the *Direct Focus* action in ruling on the instant motions. (*See* Def.'s RJN; Doc. Nos. 103-1 to 103-4 (Def.'s Supplemental RJN).) The Court finds that the documents are properly judicially noticed. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("We may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those procedings have a direct relation to the matters at issue." (internal quotation marks omitted)); *see also* Fed. R. Evid. 201. They are matters of public record, and Plaintiff does not dispute the authenticity of any document. Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

1  **2.      Motions for Summary Judgment**

2          Defendant moves for summary judgment on four grounds.  First, Defendant contends that the

3  judgment in the *Direct Focus* action precludes Plaintiff's claims in this action.  (Mem. ISO Def.'s MSJ

4  12–18.)  Second, Defendant contends that issue preclusion bars Plaintiff's claims.  (*Id.* 18–21.)  Third,

5  Defendant contends that Plaintiff's breach of warranty claims lack merit as a matter of law.  (*Id.* at

6  21–24.)  And fourth, Defendant contends that the applicable statute of limitations bars Plaintiff's

7  complaint.  (*Id.* at 24–25.)  Plaintiff moves for cross summary judgment on all of Defendant's

8  contentions.[7]  (*See* Pl.'s Mem. ISO MSJ.)  The Court addresses each argument in turn.

9  *A.      Claim Preclusion*

10  *(1)      Applicable Law*

11          At the threshold, the parties disagree whether California or federal claim preclusion law

12  applies to Plaintiff's breach of warranty claims.  (*Compare* Mem. ISO Def.'s MSJ 12–13 (arguing that

13  California law applies), *with* Pl.'s Opp'n 10 (noting conflicting authority).)  In light of varied and

14  contradictory case law on this issue, the Court commiserates with the parties.  Nevertheless, the Court

15  has reviewed the jurisprudence and concludes that California claim preclusion law applies.

16          In a diversity of citizenship action, a federal court applies the preclusion rules of the state in

17  which it sits.  *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008); *Semtek Int'l Inc. v. Lockheed Martin*

18  *Corp.*, 531 U.S. 497, 508–09 (2001).  Confusion exists, however, regarding the content of California's

19  claim preclusion doctrine as it applies to federal court judgments.  In *Costantini v. Trans World*

20  *Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982), the Ninth Circuit recognized that a California federal

21  court must apply California's claim preclusion law in a diversity action.  But the court concluded that

22  "California law . . . determines the res judicata effect of a prior federal court judgment by applying

23  federal standards."  *Id.*  Thus, California federal courts following *Costantini* have consistently applied

24  _____

25          [7] Defendant objects to Plaintiff's cross motion as untimely.  (Def.'s Opp'n 2.)  However, the
Court sees no prejudice to Defendant in ruling on Plaintiff's cross motion for two reasons.  First, the

26  Court was entitled to grant summary judgment in Plaintiff's favor even in the absence of a formal
cross motion.  *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) ("It is

27  generally recognized that a court has the power sua sponte to grant summary judgment to a
non-movant when there has been a motion but no cross-motion.").  Second, the Court gave Defendant

28  ample opportunity—21 days—to respond to Plaintiff's cross motion.  (*See* Doc. No. 100 (Pl.'s Mem.
ISO MSJ) (filed September 3, 2010); Doc. No. 102 (order setting briefing schedule on Plaintiff's cross
motion).)

09cv744

federal standards to determine the preclusive effects of federal court judgments.  *See In re DirecTV Early Cancellation Litig.*, 783 F. Supp. 2d 1062, 2010 WL 3633079, at *12 (C.D. Cal. Sep. 7, 2010); *Murray v. Sears, Roebuck and Co.*, 2010 WL 3490214, at *2 (N.D. Cal. Sep. 3, 2010); *Gardner v. Shell Oil Co.*, 2010 WL 157647, at *3 (N.D. Cal. Apr. 19, 2010); *Greenwich Ins. Co. v. Media Breakaway, LLC*, 2009 WL 2231678, at *5 (C.D. Cal. July 22, 2009); *MRW, Inc. v. Big-O Tires, LLC*, 2008 WL 5113782, at *6 (E.D. Cal. Nov. 26, 2008); *Genchev v. Detroit Diesel Corp.*, 2008 WL 4492648, at *3 (S.D. Cal. Oct. 2, 2008); *Simmons v. Am. Airlines*, 2002 WL 102604, at *3 (N.D. Cal. Jan. 23, 2002).

Contrary to the Ninth Circuit's holding in *Costantini*, however, California courts *do not* apply federal standards to determine the preclusive effect of federal court judgments in diversity actions. *See Johnson v. GlaxoSmithKline, Inc.*, 83 Cal. Rptr. 3d 607, 615, 623–24 (Cal. Ct. App. 2008) (applying California's primary rights doctrine to determine preclusive effect of federal court decisions); *City of Simi Valley v. Superior Court*, 4 Cal. Rptr. 3d 468, 472 (Cal. Ct. App. 2003) ("California will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right." (quoting *Gamble v. Gen. Foods Corp.*, 280 Cal. Rptr. 457, 460 (Cal. Ct. App. 1991)) (internal quotation marks omitted)); *Lucas v. Cnty. of Los Angeles*, 54 Cal. Rptr. 2d 655, 662 (Cal. Ct. App. 1996) ("Under California law, res judicata effect is determined on the basis of whether the prior federal judgment is based on the same primary right as the state action."). *But see Louie v. BFS Retail and Commercial Operations, LLC*, 101 Cal. Rptr. 3d 441, 448–49 (Cal. Ct. App. 2009) (applying federal standards to determine preclusive effect of federal court judgment in federal question action).  In fact, at least one California court has concluded that the Ninth Circuit misconstrued California law when it decided *Costantini*. *Gamble*, 280 Cal. Rptr. at 460 ("The California cases cited by defendant do not hold that California courts must employ the transactional approach for the purposes of a res judicata analysis when a prior judgment has been rendered in federal court.  Although *Costantini* . . . reaches a different conclusion, we believe that court misconstrued the holdings in *Younger v. Jensen*[, 605 P.2d 813 (Cal. 1980)] and *Levy v. Cohen*[, 561 P.2d 252 (Cal. 1977)].").  *Taylor* and *Semtek* require the Court to look to these California authorities in conducting its claim preclusion analysis.  Accordingly, the Court declines to

1   follow the interpretation of California law urged by *Contstantini* and its progeny.

2   (2)   *The Primary Rights Doctrine*

3   "Under California's claim preclusion doctrine, 'a valid, final judgment on the merits precludes

4   parties or their privies from relitigating the same "cause of action" in a subsequent suit.'" *San Diego*

5   *Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  Three

6   elements must be satisfied to support a claim preclusion defense: "(1) the second lawsuit must involve

7   the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in

8   the first lawsuit[,] and (3) the party to be precluded must itself have been a party, or in privity with

9   a party, to that first lawsuit." *Id.*

10   California defines a "cause of action" for claim preclusion purposes by reference to the

11   primary right at stake. *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing *Maldonado v.*

12   *Harris*, 370 F.3d 945, 952 (9th Cir. 2004)).  Under the primary rights doctrine:

13
14   A "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.
15

16   *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 306 (Cal. 2002) (quoting *Crowley v. Katleman*, 881

17   P.2d 1083, 1090 (Cal. 1994)); *see also Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal.

18   2010 ("[U]nder the primary rights theory, the determinative factor is the harm suffered. When two

19   actions involving the same parties seek compensation for the same harm, they generally involve the

20   same primary right.").  A party must bring all claims arising out of the same cause of action in a single

21   suit; "if not brought initially, they may not be raised at a later date."  *Mycogen*, 51 P.3d at 302; *see*

22   *also Palomar Mobilehome Park Ass'n*, 989 F.2d 362, 364 (9th Cir. 1993) ("California, as most states,

23   recognizes that the doctrine of res judicata will bar not only those claims actually litigated in a prior

24   proceeding, but also claims that could have been litigated.").

25   However, a prior judgment does not bar a subsequent action "when 'there are changed

26   conditions and new facts which were not in existence at the time the action was filed upon which the

27   prior judgment is based.'" *Planning & Conservation League v. Castaic Lake Water Agency*, 103 Cal.

28   Rptr. 3d 124, 140 (Cal. Ct. App. 2009) (quoting *McGaffey v. Sudowitz*, 10 Cal. Rptr. 862, 864 (Cal.

Ct. App. 1961)).  Nor does the doctrine of claim preclusion bar claims that arise after the initial complaint is filed.  *Allied Fire Protection v. Diede Constr., Inc.*, 25 Cal. Rptr. 3d 195, 199 (Cal. Ct. App. 2005).  "These rights may be asserted in a supplemental pleading, but if such a pleading is not filed a plaintiff is not foreclosed from asserting the rights in a subsequent action."  *Id.*

*(3)    Discussion*

Because Plaintiff succeeded to Mr. Sukumar's right, title, and interest in the equipment, the privity requirement is met here.  *See Basore v. Metro. Trust Co. of Cal.*, 234 P.2d 296, 298–99 (Cal. Ct. App. 1951); Compl. ¶ 9 & Ex. D.  Plaintiff does not dispute that the December 2004 judgment after trial in the *Direct Focus* action is a final judgment on the merits.  Thus, the only disputed issue is whether Plaintiff's breach of warranty action arises from the same cause of action—seeks to vindicate the same primary right—as Mr. Sukumar's earlier action against Nautilus.  Resolution of this issue requires the Court to answer but one deceptively simple question: Could Mr. Sukumar have raised the instant breach of warranty claims in the *Direct Focus* action?

Defendant asks the Court to answer this question in the affirmative because Mr. Sukumar fully litigated his powder coating complaints in the *Direct Focus* action.  (Mem. ISO MSJ 14–17; Reply 6.)  Plaintiff, however, contends that the warranty claims in this action involve different defects than those at issue in the *Direct Focus* action.  (Pl.'s Opp'n 12–15.)

The Court finds that a genuine issue of material fact exists regarding whether the warranty claims in this action are based on "changed conditions and new facts that were not in existence" at the time of the *Direct Focus* action.  *Planning & Conservation League*, 103 Cal. Rptr. 3d at 140.  Plaintiff's expert, Mr. Cravens, opines that "there are new . . . defects that have manifested subsequent to" the *Direct Focus* action.  (Doc. No. 99-8 (Cravens Decl.) ¶ 8.)  Mr. Cravens further opines "that other powder-coating defects that originally manifested prior to the conclusion of the [*Direct Focus* action] have now degraded" significantly.  (*Id.* ¶ 9 (internal quotation marks omitted).)  Mr. Cravens noted "numerous instances of osmotic blistering, rust[,] and corrosion that had increased in size" since his last inspection.[8]  (*Id.*)

_____

[8] Defendant objects to the quoted portions of Mr. Cravens's declaration on, among others, the grounds that they contain improper legal opinions and conclusions and lack foundation.  (Doc. No. 103-6 (Objection to Cravens Decl.), at 3.)  To the extent Defendant quarrels with Mr. Cravens's

Defendant vigorously objects to Mr. Cravens's declaration on the ground that it contradicts Mr. Cravens's earlier declaration in the *Direct Focus* action. (Def.'s Reply 3–6.) In that declaration, Mr. Cravens opined that the machines' powder coating exhibited "strong physical evidence of pinholes in the coatings [sic] protective layer, poor coverage in recessed areas, thin coating over weld spatter, thin coating on sharp edges, coating over contamination, breaches in the coating do [sic] to material handling damage, and areas of under cured coating." (Def.'s Supplemental RJN Ex. A, at 45.) These defects were "widespread among the entire population" of machines. (*Id.*) According to Defendant, "[a]ny areas of 'corrosion' or rust spots therefore, including those recently found are necessarily the result of the larger defect already litigated, not new defects themselves." (Def.'s Reply 4.) In support of this proposition, Defendant cites Mr. Cravens's earlier declaration, in which Mr. Cravens opined:

> Areas where the coating is compromised or signs of earlier failure of the coatings [sic] protective value if left untouched will cause corrosion and deterioration to start at these points, eventually undermining the coating and then spreading to adjacent areas. Furthermore, as corrosion increases, it does so at an accelerated rate until large areas of the surface are left totally unprotected.

(Def.'s Supplemental RJN Ex. A, at 45.)

The Court does not read Mr. Cravens's declaration in this case as necessarily irreconcilable with his earlier deposition. Indulging every inference in Plaintiff's favor, as the Court must on summary judgment, the Court can fairly read Mr. Cravens's earlier declaration as referring to a discrete set of powder coating defects. (*See id.* at 44–45.) The declaration in this action specifically refers to "new . . . defects that have manifested subsequent to the Direct Focus litigation." (Cravens Decl. ¶ 8.) Without determining Mr. Cravens's credibility, the Court cannot conclude that the allegedly new defects asserted in this action "necessarily result[ed]" from the defects litigated in the *Direct Focus* action, as Defendant requests. (Def.'s Reply 4.) Rather, a genuine issue of fact exists regarding whether the defects asserted in this action arose after the *Direct Focus* judgment. This conclusion prohibits the Court from granting summary judgment on Defendant's claim preclusion

---

conclusions that the allegedly new defects are "material" and "render the machines unfit for their intended purpose," Defendant's objections are well taken. (*Id.*; Cravens Decl. ¶¶ 8–9.) However, Mr. Cravens's factual statements regarding the condition of the equipment are not objectionable. To the extent Defendant objects to these statements, Defendants' objections are **OVERRULED**.

1  defense.[9]  *See Allied Fire*, 25 Cal. Rptr. 3d at 199; *City of Downey v. Johnson*, 145 Cal. Rptr. 298, 300

2  (Cal. Ct. App. 1978) (declining to apply claim preclusion because new rights accrued since rendition

3  of prior judgment).  Accordingly, the Court **DENIES** both motions as to this defense.[10]

4  ***B.     Issue Preclusion***

5  *(1)     Legal Standard*

6      As above, the Court applies California law in conducting its issue preclusion analysis.  *See*

7  *Taylor*, 553 U.S. at 891 n.4; *Semtek*, 531 U.S. at 508–09.  Issue preclusion bars "a party to prior

8  litigation from redisputing *issues* therein decided against him, even when those issues bear on different

9  claims raised in a later case."  *Vandenberg v. Superior Court*, 982 P.2d 229, 237 (Cal. 1999).  Five

10  requirements must be fulfilled to support an issue preclusion defense:

> First, the issue sought to be precluded from relitigation must be identical to that
> decided in a former proceeding.  Second, this issue must have been actually litigated
> in the former proceeding.  Third, it must have been necessarily decided in the former
> proceeding.  Fourth, the decision in the former proceeding must be final and on the
> merits.  Finally, the party against whom preclusion is sought must be the same as, or
> in privity with, the party to the former proceeding.  The party asserting collateral
> estoppel bears the burden of establishing these requirements.

15  *Pac. Lumber Co. v. State Water Res.Control Bd.*, 126 P.3d 1040, 1054 (Cal. 2006) (quoting *Lucido*

16  *v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990)) (citations omitted).  However, issue preclusion

17  "does not apply where there are changed conditions or new facts which did not exist at the time of the

18  prior judgment . . . ."  *U.S. Golf Ass'n v. Arroyo Software Corp.*, 81 Cal. Rptr. 2d 708, 713 (Cal. Ct.

19  App. 1999).

20  //

21  //

---

22
23  [9]  Defendant also suggests that the Court disregard Mr. Cravens's declaration in this case
because "Mr. Cravens performed his recent examinations on March 12, 2010 and July 13, 2010[,] over
24  a year after Plaintiff filed the Complaint in this case.  Thus, it would appear that any 'new' defects are
not properly before the [C]ourt as they are necessarily issues outside of the operative pleadings."
25  (Def.'s Reply 5 (citations omitted).)  Plaintiff cites no authority—nor is the Court aware of any—for
the proposition that a party alleging a breach of warranty must confirm the existence of the alleged
26  defect by way of an expert inspection before filing a complaint.  Accordingly, the Court does not
consider the date of Mr. Cravens's inspections dispositive.

27  [10]  Plaintiff also argues that its warranty claims did not ripen until after the December 2004
28  judgment in the *Direct Focus* action.  (Pl.'s Opp'n 11.)  Because a genuine issue of material fact exists
regarding whether the defects asserted in this action arose after the *Direct Focus* judgment, the Court
need not address Plaintiff's ripeness argument.

*(2)    Discussion*

Plaintiff's opposition to Defendant's motion for summary judgment only addresses whether the issue sought to be precluded from litigation here is identical to an issue decided in the *Direct Focus* action. (Pl.'s Opp'n 17–20.)  Accordingly, the Court assumes for the purpose of ruling on these motions that Plaintiff does not dispute that the other four issue preclusion requirements are satisfied here.[11]

Defendant defines the issue that it seeks to preclude Plaintiff from relitigating as follows: "Whether deficiencies exist in the powder coat applied to the Nautilus machines Plaintiff purchased in 1998–1999." (Mem. ISO Def.'s MSJ 19.)  Plaintiff premises all of his breach of warranty claims on powder coating defects.  (*See* Compl. ¶ 34 ("Nautilus breached its express warranties by delivering to SCSRA equipment whose powder coating suffered from defects in materials and/or workmanship."); *id.* ¶ 44 ("Nautilus breached its implied warranty [of fitness for purpose] . . . inasmuch as the Nautilus equipment was not free from defects and/or fit for its intended use and/or purpose because it suffered from defective workmanship and/or materials with respect to its powder coating."); *id.* ¶ 55 ("Nautilus breached its implied warranties of merchantability . . . inasmuch as the Nautilus equipment was not free from defects and/or fit for its purpose because it exhibited signs of defective workmanship and/or materials with respect to its powder coating.").)  The question, then, is whether this issue is identical to an issue decided in the *Direct Focus* action.

Again, the Court finds that a factual dispute exists regarding whether the issue Defendant seeks to preclude is identical to an issue decided in the *Direct Focus* action.  Defendant argues that the powder coating defects at issue in this case were adjudicated in the *Direct Focus* action as part of the "overarching issue" of "systemic powder coat deficiency on all Nautilus machines."  (Def.'s Reply 7.)  However, as the Court discussed *supra*, the Court can fairly read the record in the *Direct Focus* action as addressing a discrete set of defects.  In his order adopting Justice Wiener's report and recommendation, Judge Burns observed that his orders in the *Direct Focus* action "appl[ied] only to the actual subject matter of [that] litigation, meaning the particular contracts, equipment, and issues adjudicated in [the *Direct Focus* action], as circumscribed by the complaint allegations, the operative

---

[11]  As discussed *supra*, the final judgment and privity requirements are clearly met here.

pleadings, the trial[,] and the Judgment."[12] *Direct Focus*, 2008 WL 1860677, at *10.  Further, Plaintiff has proffered evidence that the breach of warranty claims here are based on "new . . . defects that have manifested subsequent to the Direct Focus litigation."  (Cravens Decl. ¶ 8.)  If the Court credits Mr. Cravens's declaration, then the issue sought to be precluded necessarily *could not* have been litigated in the *Direct Focus* action because the subject of this action—the allegedly new defects—did not yet exist.  This genuine issue of material fact prohibits the Court from granting summary judgment on Defendant's issue preclusion defense.  *See U.S. Golf Ass'n*, 81 Cal. Rptr. 2d at 714–15 ("The new Formulas at issue in this case are totally different than the old formula at issue in *St. Andrews*. Because the facts and conditions at issue have changed, the issue is not 'identical,' and collateral estoppel does not apply.").  Accordingly, the Court **DENIES** both motions as to this defense.

## C.      Breach of Warranty

### (1)     Express Warranty

Plaintiff premises its express warranty claim on the written product warranty that accompanied the equipment.  (Compl. ¶ 15; *see* Compl. Ex. A.)  In material part, the written warranty states: "Nautilus warrants to the original purchaser that their exercise equipment is free from defects in material and workmanship under normal use and service."  (Compl. Ex. A.)  Defendant provides a "Lifetime" warranty on the "Static Frame" of Nautilus strength machines and a five-year warranty on the "Structural Frame & Welds" of Nautilus bikes, climbers, and skates.  (*Id.*)  The parties dispute whether the Static Frame and Structural Frame & Welds warranties encompass the powder coating

---

[12] Defendant emphasizes that the Court should read the paragraph containing this sentence in its entirety.  In the next portion of the relevant paragraph, Judge Burns stated:

> Sukumar overtly signals the possibility he will sue over "warranty disputes that may develop between Plaintiff and Defendants with respect to the subject equipment" that have not been addressed or decided in this litigation.  The court expresses no opinion on that issue, except to observe warranties usually have limited temporal duration and, should any such potential dispute not be foreclosed on that basis, or on grounds of res judicata or collateral estoppel, the court will not disturb the final Judgment in this action nor reopen the case on the basis of any warranty dispute.

*Direct Focus*, 2008 WL 1860677, at *10.  This passage is clear on its face—Judge Burns was only speculating that res judicata or collateral estoppel *might* bar future warranty disputes.  And in any event, this statement is dicta and thus not binding on the Court.  *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008) ("Anything [a prior case] has to say as to matters not presented in that case is . . . dicta and thus not binding . . . .").

1  on the equipment.

2        California courts interpret written warranties according to general contract principles.

3  *McNeely v. Claremont Mgmt. Co.*, 27 Cal. Rptr. 87, 89 (Cal. Ct. App. 1962).  Under California law,

4  contract interpretation is a question of law.  *SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Ins. Co.*,

5  320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004); *see also Parsons v. Bristol Develop. Co.*, 402 P.2d 839

6  (Cal. 1965).  "The fundamental goal of contractual interpretation is to give effect to the mutual

7  intention of the parties."  *Byrne v. Laura*, 60 Cal. Rptr. 2d 908, 916 (Cal. Ct. App. 1997).  "When a

8  contract is reduced to writing, the parties' intention is determined from the writing alone, if possible."

9  *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135

10  Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 1992).

11        In interpreting the contract, a court must first determine whether the contract is ambiguous.

12  *See Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995).  "A contract provision is considered

13  ambiguous when the provision is susceptible to more than one reasonable interpretation."  *SDR*

14  *Capital Mgmt.*, 320 F. Supp. 2d at 1046 (citing *MacKinnon v. Truck Ins. Exchange*, 73 P.3d 1205,

15  1213 (Cal. 2003)).  However, the "mere fact that a word or phrase in a policy may have multiple

16  meanings does not create an ambiguity."  *Palmer v. Truck Ins. Exchange*, 988 P.2d 568, 574 (Cal.

17  1999).  "Ambiguity cannot be based on a strained instead of reasonable interpretation" of the

18  contract's terms.  *McKee v. State Farm Fire & Cas. Co.*, 193 Cal. Rptr. 745, 746 (1983).  The contract

19  must be interpreted as a whole**.**  *MacKinnon*, 73 P.3d at 1213.  Further, the Court can determine

20  whether the contract is ambiguous on its face or by using extrinsic evidence of the parties' intent.

21  *Oceanside 84, Ltd. v. Fidelity Fed. Bank,* 66 Cal. Rptr. 2d 487, 492 (Cal. Ct. App. 1997); *see also*

22  *Founding Members*, 109 Cal. App. 4th at 955.  If no parol evidence is introduced to interpret the

23  contract, or if the evidence is not contradictory, the trial court's resolution of the ambiguity is a

24  question of law.  *See Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (Cal. Ct. App. 1992).  However, "when

25  two equally plausible interpretations of the language of a contract may be made . . . parol evidence

26  is admissible to aid in interpreting the agreement, thereby presenting a question of fact which

27  precludes summary judgment if the evidence is contradictory."  *WYDA Assocs. v. Merner*, 50 Cal.

28  Rptr. 2d 323, 327 (Cal. Ct. App. 1996) (quoting *Walter E. Heller Western Inc. v. Tecrim Corp.*, 241

Cal. Rptr. 677, 681 (Cal. Ct. App. 1987)).

The key provision at issue in this case is Defendant's guarantee that the "Static Frame" and "Structural Frame & Welds" are "free from defects in material and workmanship." (Compl. Ex. A.) Plaintiff contends that "[t]he plain language of the warranty unambiguously encompasses powder coating" because powder coating is a "'material' used in connection with the frames." (Pl.'s Opp'n 20.) Defendant, on the other hand, contends that "'Static Frame' refers to the metal structure, and does not include the paint or powder coating." (Def.'s Mem. ISO MSJ 23.) The language of the warranty itself is not a picture of clarity. Accordingly, the Court turns to the parties' extrinsic evidence to determine whether the disputed provisions are ambiguous.

In support of its proposed interpretation, Defendant submits the declarations of (1) Gregory Webb, Director of Engineering for Med-Fit Systems, Inc., the recent successor to Nautilus's Strength Division, and former Nautilus Vice President of Engineering for Commercial Strength (Doc. No. 94-5 (Webb Decl.) ¶ 1); (2) Tracy Maloney, Defendant's Vice President of Customer service (Doc. No. 94-6 (Maloney Decl.) ¶ 1); and (3) Dean Sbargia, President and CEO of Med-Fit Systems and former distributor of Nautilus strength equipment (Doc. No. 94-4 (Sbargia Decl.) ¶¶ 1, 2, 5).[13] Each declarant states that, to the best of his knowledge, Defendant has never provided any express warranty for the powder coating on machines it sells domestically. (Maloney Decl. ¶ 3; Sbargia Decl. ¶ 5; Webb Decl. ¶¶ 4–5.) Mr. Maloney explains that the warranty for the "metal frame" on its machines "is limited exclusively to the structural integrity of the machine and does not include the powder coat. Powder coat, paint, or rust issues are not covered by a Nautilus warranty."[14] (Maloney Decl. ¶ 6.) Mr. Webb, who is "aware of the specific machines that were at issue" in the *Direct Focus* action, specifically asserts that "no express warranty [was] provided for the powder coat on the Nautilus brand

---

[13] Plaintiff variously objects to Mr. Maloney's, Mr. Sbargia's, and Mr. Webb's declarations. (*See* Doc. Nos. 99-13 (Objections to Sbargia Decl.), 99-14 (Objections to Webb Decl.), 99-15 (Objections to Maloney Decl.).) The Court relies only on admissible evidence in conjunction with these motions. Accordingly, to the extent Plaintiff objects to the quoted statements, Plaintiff's objections are **OVERRULED**.

[14] Defendant contends that the should Court credit Mr. Maloney's declaration above all others because, as Nautilus's Vice President of Customer Service, "Maloney is the 'last word' or the proverbial 'top of the food chain.'" (Def.'s Reply 9.) This argument is without merit. Maloney was not a Nautilus employee at the time Mr. Sukumar purchased the equipment, and therefore, the Court questions the probative value of his testimony. (Maloney Decl. 1; Objections to Maloney Decl. 4–7.)

1    machines . . . [Plaintiff] possesses."  (Webb Decl. ¶¶ 3, 6.)

2        Plaintiff, of course, submits three declarations supporting its proposed interpretation of the

3    warranty.[15] Mr. Sukumar states that, while he was negotiating the sales contracts with Nautilus, it was

4    his understanding "that [the] warranties for the structures and frames of the machines clearly covered

5    the powder coating on the machines."  (Sukumar Decl. ¶ 9.)  Mr. Sukumar "mentioned on multiple

6    occasions to [a Nautilus salesperson] that the comprehensive warranty provided by Nautilus was one

7    of the primary reasons [he] was buying the equipment from Nautilus."  (*Id.* ¶ 6; *accord* Smith Decl.

8    ¶ 6; Doc. No. 99-6 (Turner Decl.) ¶ 6.)  Mr. Smith and Mr. Turner, the Nautilus salesmen who

9    negotiated the sales contracts on Nautilus's behalf, understood that the warranties for the structues and

10   the frames covered the powder coating on the machines.  (Smith Decl. ¶ 8; Turner Decl. ¶ 9.)  Mr.

11   Smith also "assured Mr. Sukumar that his warranty coverage for the frames, structures[,] and welds

12   of the equipment he was purchasing applied to the powder coating as well because the powder coating

13   played an integral role in protecting the structures."  (Smith Decl. ¶ 12.)

14       The Court, after receiving all of the extrinsic evidence, determines that the relevant warranty

15   provision are "reasonably susceptible" to either proposed interpretation.  *Winet*, 6 Cal. Rptr. 2d at 557.

16   Declarants on both sides who are familiar with the specific transaction at issue—Webb for Defendant

17   and Smith, Sukumar, and Turner for Plaintiff—interpret the warranty differently.  (Smith Decl. ¶ 8;

18   Sukumar Decl. ¶ 9; Turner Decl. ¶ 9; Webb Decl. ¶¶ 3, 6.)  Accordingly, the meaning of the coverage

19   provision for the machines' frames presents a question of fact.   *WYDA Assocs.*, 50 Cal. Rptr. 2d at

20   327.  For that reason, the Court **DENIES** both motions as to Plaintiff's express warranty claim.[16]

21

22       [15] Like Plaintiff, Defendant variously objects to Mr. Smith's, Mr. Sukumar's, and Mr. Turner's
     declarations.  (*See* Doc. No. 103-7 (Objections to Smith Decl.), 103-8 (Objections to Sukumar Decl.),
23   103-9 (Objections to Turner Decl.).)  The Court reiterates that it relies only on admissible evidence
     in conjunction with these motions.  Accordingly, to the extent Defendant objects to the statements
24   referenced herein, Defendant's objections are **OVERRULED**.

25       [16] Plaintiff argues that Defendant should be estopped from asserting that the warranty does not
     cover powder coating because "Nautilus, through its agent Frank Smith, represented to Sukumar that
26   the express warranty on his equipment covered powder coating—a fact that was material to Sukumar's
     purchase—in order to induce him to purchase the equipment." (Pl.'s Opp'n 22.)  However, the Court
27   has discretion to grant summary judgment on the basis of an equitable doctrine.  *See Hartford Cas.
     Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18, 28 (Cal. Ct. App. 2003).  In light of the
28   conflicting evidence supporting the parties' proposed interpretations of the warranty, the self-
     interested nature of the declarations supporting Plaintiff's estoppel argument, and Judge Burns's

*(2)     Implied Warranty*

Plaintiff's complaint alleges two implied warranty causes of action—one for breach of the implied warranty of fitness of purpose and one for breach of the implied warranty of merchantability. (Compl. 39–60.)  To prevail on an implied warranty of fitness claim under California law, a plaintiff must establish the following elements:

> (1) [T]he buyer intended to use the product for a particular purpose; (2) the seller had reason to know this; (3) the buyer relied on the seller's judgment to select suitable goods for that purpose; (4) the seller had reason to know that the buyer was relying on seller in this way; and (5) the product failed to suit buyer's purpose and subsequently damaged the buyer.

*Birdsong v. Apple, Inc.*, 2008 WL 7359917, at *5 (N.D. Cal. June 13, 2008) (citing *Keith v. Buchanan*, 220 Cal. Rptr. 392, 399 (Cal. Ct. App. 1985)).  To prevail on an implied warranty of merchantability claim, a plaintiff must demonstrate that the subject goods are unfit for the ordinary purpose for which such goods are used.  Cal. Com. Code § 2314(2)(c).

Thus, in order to prevail on his implied warranty causes of action, Plaintiff must show that the machines are unfit for their intended purposes.  Defendant, citing the findings of Judge McCue, Justice Wiener, and Judge Burns, argues Plaintiff should be estopped from re-arguing that the machines are unfit for their intended purposes.  (Def.'s Mem. ISO MSJ 23–24 ("Retired Justice McCue, retired Justice Wiener, and sitting District Judge Burns, among many others, have all found, after years of inspections, expert reports, and litigation, that these Nautilus machines are compliant, fit for their intended purposes, and merchantable.").)  The Court disposes of this issue as it disposed of Defendant's issue preclusion defense.  Plaintiff has proffered evidence that it bases its breach of warranty claims on defects that arose after the conclusion of the *Direct Focus* litigation.  (*See* Cravens Decl. ¶ 8.)  Defendant has proffered conflicting evidence in the form of Mr. Cravens's purportedly contradictory declaration.  (*See* Def.'s Supplemental RJN Ex. A, at 44–45.)  Accordingly, the issue Defendant apparently seeks to preclude—whether the machines are fit for their intended purposes—conceivably *could not* have been litigated in the *Direct Focus* action because the allegedly new defects did not yet exist.  In light of the factual dispute regarding when the relevant defects arose,

---

credibility findings as to Mr. Smith, Mr. Sukumar, and Mr. Webb (*see* Def.'s NOL Ex. 7, at 2–3, 5), the Court declines to apply equitable estoppel to resolve these competing motions.

the Court **DENIES** both motions as to Plaintiff's implied warranty claims.

*(3)      Notice*

Defendant argues for the first time in its reply that Plaintiff has not provided the requisite notice of the allegedly new defects under California Commercial Code section 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or bee barred from any remedy . . . ."). (Def.'s Reply 9.)  Because Defendant raised this argument for the first time in its reply, it is improper, and the Court declines to consider it.  *See Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007).

**D.      Statute of Limitations**

California Commercial Code section 2725 imposes a four-year statute of limitations for breach of warranty claims.  *See Fundin v. Chicago Pneumatic Tool Co.*, 199 Cal. Rptr. 789, 795 (Cal. Ct. App. 1984).  A cause of action for breach of warranty accrues for statute of limitations purposes when the breach occurs, and the breach occurs when tender of delivery is made.  Cal. Com. Code § 2725(2). Tender of delivery requires the seller to make available to the buyer goods that conform to the contract specifications.  Cal. Com. Code §§ 2503(1), 2106(2).  Here, Defendant did not deliver conforming goods to Plaintiff until December 30, 2004.  (*See* Def.'s NOL Ex. 8, at 2; *Direct Focus*, 2008 WL 1860677, at *5–12.)  Plaintiff commenced this action on December 22, 2008.  (*See* Compl.) Accordingly, Plaintiff filed his complaint before the statute of limitations expired.[17]

Defendant's argues that "Plaintiff's assertion that only conforming goods will trigger the statue is unsupported and would allow an indefinite tolling to any buyer in a sales of goods case." (Def.'s Reply 10.) This argument is without merit.  Under California Commercial Code section 2725, a cause of action for breach of warranty does not accrue until tender of delivery is made.  California Commercial Code section 2503 defines "tender of delivery" as delivery of *conforming goods*. Accordingly, the relevant statutes, by their plain terms require delivery of conforming goods to start

---

[17] Because the Court finds that Plaintiff commenced its action within the four year statute of limitations under California Commercial Code section 2725, the Court does not address whether the "future performance" exception in section 2725(2) applies to Plaintiff's claims pertaining to the "bikes, climbers, and skate machines," on which Nautilus provides only a five-year warranty. (Pl.'s Reply 9.)

1   the proverbial clock running on the statute of limitations.

2       Moreover, this interpretation of California Commercial Code section 2725 does not, as

3   Defendant suggests, allow indefinite tolling.  The statute of limitations is only tolled so long as the

4   goods do not conform to the contract for sale.  Once the seller delivers conforming goods, the statute

5   of limitations begins to run.  This interpretation is sensible where, as here, the seller does not deliver

6   conforming goods for several years after the contract for sale is made.

7       Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment on Defendant's

8   statute of limitations defense and **DENIES** Defendant's motion for summary judgment.

9                                   **CONCLUSION**

10      For the reasons stated above, the Court **DENIES** both motions for summary judgment as they

11  pertain to Defendant's issue preclusion and claim preclusion defenses, and to the merits of Plaintiff's

12  breach of warranty claims.  As to Defendant's statute of limitations defense, the Court **DENIES**

13  Defendant's motion and **GRANTS** Plaintiff's cross-motion.

14      **IT IS SO ORDERED.**

15

16  DATED:  March 24, 2011

17                          _____
                            Honorable Janis L. Sammartino
18                          United States District Judge

19

20

21

22

23

24

25

26

27

28

09cv744